IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| DONALD ELIJAH MATTHEWS JR., § | |
| § | |
| Petitioner, § | |
| § | |
| v. § | 2:11-CV-0164 |
| § | |
| RICK THALER, Director, § | |
| Texas Department of Criminal Justice, § | |
| Correctional Institutions Division, § | |
| § | |
| Respondent. § | |

**REPORT AND RECOMMENDATION TO DENY
PETITION FOR WRIT OF HABEAS CORPUS**

Came for consideration the Petition for Writ of Habeas Corpus filed by petitioner DONALD ELIJAH MATTHEWS JR. By his habeas application, petitioner challenges his September 16, 2008, convictions for arson and violation of a protective order out of the 47th Judicial District Court of Potter County, Texas, and the 80 and 15-year sentences assessed for these convictions. *See State v. Matthews*, Nos. 57,858 and 57,859. The undersigned United States Magistrate Judge recommends petitioner's habeas application be DENIED.

I.
FACTUAL AND PROCEDURAL HISTORY

Petitioner Matthews's estranged wife, LaKesha Matthews, obtained a protective order against petitioner on March 27, 2008. Evidence at trial showed petitioner violated the protective order on several occasions by approaching his ex-wife at work, running into her car from behind

with his car, and, in one instance, attacking her while she was picking her daughter up from school, commandeering her car and driving it into a field, and then biting her finger. These violations escalated on May 10, 2008, when petitioner came to her house early in the morning, banged on her window, and demanded to be let inside. When that course of action proved fruitless, petitioner left. Later that morning, as LaKesha Matthews was leaving her residence to go to work, petitioner pulled his car alongside hers and threatened her. Petitioner then drove away, but Mrs. Matthews's daughters pursued petitioner while calling the police. The daughters eventually lost sight of petitioner's car and returned home. A little later that morning, the eldest daughter saw petitioner throw a burning piece of cloth into LaKesha Matthews's bedroom, setting the house ablaze. The fire department responded and extinguished the fire, but not until the home suffered substantial damage.

On May 22, 2008, petitioner was indicted in cause number 57,858 for violation of a protective order and in cause number 57,859 for arson of a habitation. Petitioner entered a plea of not guilty and was tried by a jury. Petitioner was found guilty of both offenses and pleaded true to an enhancement paragraph in each case alleging a prior felony conviction.[1] The jury sentenced petitioner to 80 years imprisonment on the arson charge, cause number 57,859 and 15 years imprisonment for violation of a protective order, cause number 57,858, such sentences to run concurrently.

Petitioner appealed to the Seventh Court of Appeals. His convictions were affirmed in an unpublished opinion on August 27, 2010. Petitioner then filed a petition for discretionary review (PDR) with the Texas Court of Criminal Appeals. The PDR was refused by the Texas Court of

---

[1]The indictment actually contained two enhancement paragraphs but the defendant was only called upon to plead to the first enhancement paragraph of each indictment.

Criminal Appeals on April 28, 2010. On August 23, 2010, petitioner filed two state Writ of Habeas Corpus applications, WR 74,754-01 and -02. The Texas Court of Criminal Appeals remanded the case to the trial court on November 10, 2010, for additional findings of fact regarding the effectiveness of petitioner's trial counsel and the credibility of an affidavit filed by petitioner's wife in which she recanted her trial testimony. Trial counsel submitted an affidavit explaining his trial strategy and belief that his representation was effective. The prosecutor submitted an affidavit denying the accusations in petitioner's wife's affidavit. Petitioner submitted additional documents labeled as "writs of habeas corpus" on December 29, 2010 and January 24, 2011 in which petitioner requested appointed counsel because of the complexity of the case and requested an evidentiary hearing. The trial court issued findings of fact on March 4, 2011, finding petitioner's trial counsel was effective and the affidavit of petitioner's wife was not credible. The Texas Court of Criminal Appeals denied petitioner's writs of habeas corpus on April 6, 2011. Petitioner filed this application on July 28, 2011.

## II.
## PETITIONER'S CLAIMS

Petitioner contends respondent is holding him in violation of the Constitution and laws of the United States for the following reasons:

1. The Court of Criminal Appeals abused its discretion by using the findings of fact made by the trial court to deny petitioner's writ of habeas corpus;

2. Petitioner was denied due process when he was convicted by a jury that was not composed of a fair cross section of the community, and the prosecutor violated *Batson* by striking a juror without a neutral explanation;

3. Petitioner's trial counsel was ineffective because he:

    A.   Failed to call available witnesses,

   B. Did not present mitigation evidence, and

   C. Allowed the charges to be tried together;

4. Petitioner is actually innocent;

5. The evidence used to convict petitioner was legally and factually insufficient because the testimony of one witness was contrary to the forensic evidence adduced from the expert witness's testimony;

6. The state violated *Brady* by "withholding" an affidavit petitioner gave to his attorney, who then gave it to the state;

7. The court erred by allowing "hearsay, unadjudicated extraneous offenses" to be used against petitioner; and

8. The court erred by failing to require the jury to find extraneous offenses "beyond a reasonable doubt" before considering extraneous offenses.

### III.
### AEDPA

This federal petition was filed after the April 24, 1996 effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Consequently, the provisions of the AEDPA apply to this case.

### IV.
### Merits

Federal habeas corpus will not lie unless an error was so gross or a trial so fundamentally unfair that the petitioner's constitutional rights were violated. In determining whether an error was so extreme or a trial so fundamentally unfair, this Court must review the putative error at issue, looking at the totality of the circumstances surrounding the error for a violation of the petitioner's constitutional rights.

As referenced under paragraph III. above, this case is governed by the AEDPA. Therefore, this federal habeas court, pursuant to 28 U.S.C. § 2254(d), must defer to the state

court's adjudication of petitioner's claims on the merits, unless the state court decision was (1) contrary to, or involved in unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. A state court's decision will be contrary to clearly established federal law when it reaches a legal conclusion in direct opposition to a prior decision of the United States Supreme Court, or when it reaches a different conclusion than the United States Supreme Court on a set of materially indistinguishable facts. A state court's decision will be based on an unreasonable application of clearly established federal law when it is objectively unreasonable. *Kutzner v. Johnson*, 242 F.3d 605 (5th Cir. 2001).

### *1. Abuse of Discretion*

By his first ground, petitioner complains the Texas Court of Criminal Appeals abused its discretion when it relied on the trial court's findings of fact in its decision to deny petitioner's Application for Writ of Habeas Corpus because the findings of fact did not address his *Batson* issue.

This claim is not cognizable in a federal habeas proceeding. An attack on a proceeding collateral to the detention, but not on the detention itself, does not entitle petitioner to relief. *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995). Errors in a state habeas proceeding cannot serve as a basis for setting aside a valid original conviction. *Id.* Petitioner's first ground should be denied.

### *2. Fair Cross Section and* Batson

In his second ground, petitioner contends the state violated *Batson v. Kentucky*, 476 U.S.

79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), because the prosecutor used a peremptory challenge to remove an African-American from the jury pool and because the venire was not made up of a fair cross section of the community. *See id.* at 96-97, 106 S. Ct. at 1723. Petitioner did not raise this argument on direct appeal. Instead, the first time he raised this claim was in his state habeas corpus application. The Texas Court of Criminal Appeals has held a habeas corpus action is not a substitute for direct appeal where the facts providing the basis for the alleged error were available at the time of direct appeal. *Ex parte Groves*, 571 S.W.2d 888, 890 (Tex. Crim. App. 1978). Thus, a claim that could have been raised on direct appeal is procedurally defaulted if it is raised for the first time in a petition for habeas corpus relief. *Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1996) (op. on reh'g).

The Fifth Circuit has addressed a situation of a petitioner bringing a *Batson* claim in a federal habeas petition but who failed to bring the claim on direct appeal at the state court level. *See Dorsey v. Quarterman*, 494 F.3d 527, 532 (5th Cir. 2007). In *Dorsey*, the court established that Texas case law "sets forth an adequate state ground capable of barring federal habeas review" and held a United States District Court was barred from reviewing the merits of such a claim but, instead, must apply the procedural bar established by Texas law. *Id.*

On direct appeal petitioner raised only the factual and legal sufficiency of the evidence and did not raise the *Batson* issue. The record, which should have contained all of the facts necessary to bring *Batson* issues, was available for direct appeal.[2] Therefore, petitioner was procedurally barred from raising the issue for the first time in his state habeas petition. This Court must apply the procedural bar and cannot consider the merits of the claim. *See id.*

---

[2] As set out subsequently, the *Batson* issue was not raised at trial.

Petitioner's second ground is procedurally defaulted.

Even if petitioner's claim were not procedurally barred, petitioner has failed to present a facially valid *Batson* claim. Petitioner has not shown the prosecutor had discriminatory intent in excluding an African-American venire member. In fact, the trial record reflects no *Batson* challenge was made prior to trial and there is nothing that shows the race of any prospective jurors who were peremptorily stricken by the state. Instead, petitioner points out the lack of African-American venire members and claims the dismissal of an African-American venire member entitles him to a *Batson* hearing. This is a claim that should have been raised during the trial. *Jones v. Butler*, 864 F.2d 348, 369 (5th Cir. 1988) ("[A] contemporaneous objection to the use of peremptory challenges to exclude jurors on the basis of race is a necessary predicate to later raising a *Batson* claim."). There is no factual basis for it at this stage, and it is not proper for our review here.[3]

Regarding the composition of the venire panel, petitioner has likewise failed to present a claim. In a criminal case, potential jurors must represent a fair cross-section of the community; "the jury wheels, pools of names, panels, or venires from which the juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." *Taylor v. Louisiana*, 419 U.S. 522, 538, 95 S. Ct. 692 (1975). But defendants are not entitled to a jury of a specific composition. *Id.; United States v. Steen*, 55 F.3d 1022, 1030 (5th Cir. 1995). The Fifth Circuit has explained that a petitioner seeking to establish a cross-section claim must initially show 1) that the group allegedly excluded is

---

[3]From reading the voir dire transcript, it is not clear whether there was an African-American venire member. Indeed, trial counsel stated in his affidavit that he was not aware of any African-American venire members. Also, if in fact there was an African-American venire member, Matthews fails to show how the venire member was removed. Matthews does not show the prosecutor used a peremptory strike; it is equally possible the venire member was removed for cause, was stuck by Matthews's own counsel, or was simply past the cut off point to be seated on the panel.

distinctive, 2) that the group is not fairly and reasonably represented in venires in relation to its presence in the community, and that the underrepresentation is caused by a systematic exclusion of the group in the selection process. *United States v. Olaniyi-Oke*, 199 F. 3d 767, 773 (5th Cir. 1999). Moreover, "[a] defendant cannot establish a prima facie violation by relying solely on the composition of the jury at his own trial." *Id*. Petitioner has not alleged any factual basis for his conclusion that the Randall County jury selection process systematically excludes African-Americans from the selection process. Accordingly, petitioner has failed to make a prima facie showing that the jury was unconstitutionally empaneled. Petitioner is not entitled to relief on these claims.

### 3. Ineffective Assistance of Counsel

By his third ground, petitioner claims his trial counsel was ineffective for failing to call available witness, failing to present mitigation evidence, and allowing the two offenses to be tried in the same proceeding.

The proper standard for judging petitioner's contention is enunciated in *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). Under the two-pronged *Strickland* standard, a petitioner must show defense counsel's performance was both deficient and prejudicial. *Id.* at 687, 104 S.Ct. at 2064. An attorney's performance was deficient if the attorney made errors so serious the attorney was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment to the United States Constitution. *Id*. That is, counsel's performance must have fallen below the standards of reasonably competent representation as determined by the norms of the profession. A reviewing court's scrutiny of trial counsel's performance is highly deferential, with a strong presumption counsel's

performance falls within the wide range of reasonable professional assistance. *Id.* at 689, 104 S.Ct. at 2065. Strategic choices made after a thorough investigation of both the law and facts are "virtually unchallengeable." *Id.* at 690-91, 104 S. Ct. at 2066. This is a heavy burden which requires a "substantial," and not just a "conceivable," likelihood of a different result. *Harrington v. Richter*, 562 U.S.___, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011); *see also Cullen v. Pinholster*, 563 U.S.___, 131 S.Ct. 1388, 1403, 179 L.Ed.2d 557 (2011).

Additionally, a petitioner must show counsel's deficient performance prejudiced the defense. To establish this prong, a petitioner must show counsel's errors were so serious as to deprive petitioner of a fair trial. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. Specifically, to prove prejudice, a petitioner must show "(1) there is a reasonable probability that, but for counsel's unprofessional errors, the ultimate result of the proceeding would have been different . . . and (2) counsel's deficient performance rendered the trial fundamentally unfair." *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993). A showing of significant prejudice is required. *Spriggs v. Collins*, 993 F.2d 85, 88 n. 4. (5th Cir.1993). If a petitioner fails to show either the deficiency or prejudice prong of the *Strickland* test, then the Court need not consider the other prong. *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069.

When a state prisoner asks a federal court to set aside a conviction or sentence due to ineffective assistance of counsel, the federal court is required to use the "doubly deferential" standard of review that credits any reasonable state court finding of fact or conclusion of law,

and presumes defense counsel's performance fell within the bounds of reasonableness. *Burt v. Titlow,* ___ U.S.___, 134 S.Ct. 10, 187 L. Ed. 2d 348 (2013). The absence of evidence cannot overcome the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance" and cannot establish that performance was deficient. *Id.* This ineffective assistance of counsel claim was adjudicated on the merits in a state court proceeding, and the denial of relief was based on a factual determination that will not be overturned unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041 (2003). A state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Burt*, 134 S. Ct. at 15. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The petitioner has the burden of rebutting this presumption of correctness by clear and convincing evidence. *Hill*, 210 F.3d at 485. When the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits, which is entitled to this presumption. *Ex parte Torres*, 943 S.W.2d at 472; *Singleton*, 178 F.3d at 384 (recognizing this Texas state writ jurisprudence).

### A. Failure to Call Available Witnesses

Petitioner claims his attorney was ineffective because he failed to call Doreen Lewis to testify. In support of this contention, petitioner submitted an affidavit from Lewis, dated April 17, 2010, in which she claims to have seen a person leaving the area of the arson on the morning of the crime. She said she was "familiar with [petitioner's] characteristics and his walk [and] [t]here is no doubt in [her] mind that the person [she] saw that particular morning was not

[petitioner]." Trial counsel addressed the issue in an affidavit submitted to the trial court on March 11, 2011, in which counsel states he interviewed Lewis and she had said she was willing to testify but she believed petitioner had started the fire. Trial counsel also said that Lewis did not arrive at the courthouse until after the guilt/innocence phase of the trial had concluded. Lastly, trial counsel says he would not have called her as a witness even if she had been present at guilt/innocence as a matter of trial strategy because he believed her testimony would have been unhelpful. He also declined to use her as a character witness at the punishment stage because it would open the door to "have you heard" questions regarding petitioner's numerous prior convictions.

In light of the competing factual accounts, this Court must accept the findings of fact made by the trial court and adopted by the Texas Court of Criminal Appeals unless those findings of fact are objectively unreasonable. *Miller-El*, 537 U.S. at 340, 123 S. Ct. at 1041. The state court determination that trial counsel was more credible than Doreen Lewis was not objectively unreasonable. Trial counsel asserted a valid strategic reason for not calling Lewis as a witness. According to counsel, Lewis "believed petitioner had started the fire." This Court defers to the discretion of trial counsel regarding decisions made for the purpose of trial strategy as long as the decision was based upon thorough investigation of the facts. *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066 ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable"). Here, both trial counsel and Lewis's affidavit are in agreement that trial counsel interviewed Lewis. Petitioner has not stated any reason why trial counsel's decision not to call the witness was objectively unreasonable.

B. Presentation of Mitigation Evidence

Petitioner complains trial counsel was ineffective for failing to present mitigation evidence. As with the previous point, this court applies the doubly deferential standard to matters of trial strategy. Trial counsel attested in his affidavit that the only available mitigating evidence was testimony from family members and friends who could testify as to petitioner's character. He chose not to call any character witnesses because he felt the benefit of character evidence would be outweighed by the potential "have you heard" questions the state would have been able to ask on cross examination, which would belabor the existence and amount of petitioner's prior arrests and convictions. This is a valid reason not call character witnesses. Petitioner has not argued that trial counsel was anything less than thorough in researching the facts as they related to the existence of mitigation evidence. Since it is not contended that trial counsel's research was inadequate or that it was objectively unreasonable to think the evidence would be more harmful than helpful, deference to the presumption that counsel's strategic reasons for not presenting mitigation evidence were reasonable is appropriate.

C. Allowing the Charges to Be Tried Together

Petitioner complains that allowing the charges to be tried together caused the jury to find him guilty of "being a criminal" because it allowed evidence of both crimes to be admitted in the same proceeding. Again, this is an issue of trial strategy. Counsel's affidavit states counsel's intent in having the two charges tried together was to have concurrent rather than consecutive sentences assessed. Under the Texas Penal Code, if offenses arising out of the same criminal episode are tried in a single action, the sentences must run concurrently. TEX. PENAL CODE § 3.03(a). Given the amount of the evidence against petitioner, it is extremely unlikely that, but

for the cases being tried together, he would have been acquitted of one or both offenses. He certainly could have been found guilty of both charges if tried separately and would have then faced the possibility of consecutive sentences. Further, even if the cases had been tried separately, all of the evidence admitted during the joint trial would have been admissible in each separate trial to show motive, identity, plan or design, or simply as evidence of the offense charged. Here, not only was counsel's decision to try the cases together entitled to the presumption of effectiveness given to matters of trial strategy, it was also likely the best choice, probably working to petitioner's benefit. Petitioner's third ground should be denied.

### 4. Actual Innocence[4]

By his fourth ground, petitioner claims he is actually innocent. To state a claim of actual innocence on habeas review a petitioner must demonstrate that his actual innocence renders a court's refusal to address underlying constitutional claims a fundamental miscarriage of justice. *Lucas v. Johnson*, 132 F.3d 1069, 1076 (5th Cir. 1998). Actual innocence is not a free standing ground for relief. *United States v. Scruggs*, 691 F.3d 660, 671 (5th Cir. 2012). Rather, it is a gateway to consideration of claims of constitutional error that would otherwise be barred. *Id.* Petitioner has not identified any procedural bars that a claim of actual innocence is necessary to overcome.

If we were to assume, for the sake of argument, that a free standing claim of actual innocence does exist, petitioner's claim would still fail. In order to establish a freestanding claim of actual innocence, petitioner would need to demonstrate his innocence through newly discovered evidence that was unknown to the defendant at the time of trial. *Lucas*, 132 F.3d at

---

[4]Petitioner presents actual innocence and sufficiency of the evidence in the same ground. Because they raise separate grounds for relief, they are addressed separately.

1076. Petitioner has not presented any evidence that was not readily available at trial. Petitioners fourth ground should be denied.

### 5. *Sufficiency of the Evidence*

Liberally construing the petition, the Court interprets Matthews's fourth ground as challenging the sufficiency of the evidence used to convict him. A criminal defendant has a federal due process right to be convicted only upon evidence sufficient to prove beyond a reasonable doubt the existence of every element of the offense. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560 (1979); *Foy v. Donnelly,* 959 F.2d 1307, 1313 (5th Cir. 1992). "When a defendant seeking federal habeas relief contends that the evidence is insufficient to support a state court conviction, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Gibson v. Collins*, 947 F.2d 780, 781 (5th Cir.1991) (quoting *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789)). This standard is applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Foy*, 959 F.2d at 1313-14. This Court need not find that the evidence excluded every reasonable hypothesis of innocence or was wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could have found that the evidence, whether direct or circumstantial, and all reasonable inferences drawn from it, established guilt beyond a reasonable doubt. *United States v. Salazar*, 958 F.2d 1285, 1294 (5th Cir. 1992). In so determining, great weight must be given to the state court's determination. *Gibson*, 947 F.2d at 782, 786. This standard applies whether the evidence is direct or circumstantial. *United States v. Mergerson,* 4 F.3d 337, 341 (5th Cir. 1993) (citing *United States*

*v. Triplett*, 922 F.2d 1174 (5th Cir. 1991)).

Petitioner challenges the evidentiary sufficiency of his conviction for arson.  Matthews contends the difference between the testimony given by his step daughter and the fire inspector's hypothesis of what happened renders the evidence used to convict him insufficient.  The Texas arson statute provides: "A person commits an offense if the person starts a fire, regardless of whether the fire continues after ignition, or causes an explosion with intent to destroy or damage: . . . any building, habitation, or vehicle: . . . knowing it is within the limits of an incorporated city or town [or] knowing that it is located on property belonging to another."  TEX. PENAL CODE ANN. § 28.02(a)(2) (West 2009).  Petitioner contends the state's evidence against him fails because there is no proof he started the fire.  He bases this contention on the alleged unreliability of the testimony of his step daughter.  Petitioner's step daughter testified that she saw him throw a burning piece of fabric through the window of petitioner's wife's bedroom and that the fire started on some blankets which had been hanging on the window but had fallen on a dresser that was sitting beneath the window.  Conversely, the fire inspector hypothesized that, while the fire was the result of arson, he believed the fire to have started more in the middle of the bedroom floor.  He also testified (and petitioner places great weight on this statement) that the window of the bedroom was closed when the fire started.  Pictures taken of the crime scene showed, however, that the bedroom window in question was open (or at least the glass of the window had been broken) following the extinguishing of the fire.

While the conflict between the testimony of the fire inspector and petitioner's step daughter might raise an issue of fact, it is not the kind of conflict which calls into question the sufficiency of the evidence.  The question before this court is whether, after viewing the

evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. If in fact there is a conflict, a rational juror could reasonably credit the eye-witness testimony of the step daughter while discounting the after-the-fact observations and opinions of the fire inspector. The evidence was sufficient to establish the crime of arson. Petitioner's fourth ground should be denied.

### 6. *Withholding of Exculpatory Evidence*

By his fifth ground, petitioner alleges the state violated his constitutional rights by withholding exculpatory evidence. Following his conviction and sentencing, petitioner obtained an affidavit from his wife in which she stated petitioner was innocent of the crimes he had been convicted of and that she had committed perjury. Petitioner gave this affidavit to his appellate attorney, who then delivered it to the prosecutor. Petitioner complains the prosecutor wrongly withheld this affidavit in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

To prevail on a *Brady* claim, a petitioner must show (1) the prosecution suppressed evidence, (2) the evidence was favorable to the defense, and (3) the evidence was material. *Drew v. Collins*, 964 F.2d 411, 419 (5th Cir. 1992). The State has no obligation to point the defense toward potentially exculpatory evidence when that evidence is either in the possession of the defendant or can be discovered by exercising due diligence. *Rector v. Johnson*, 120 F.3d 551, 558-59 (5th Cir. 1997).

The evidence complained about was known to petitioner. Because petitioner knew of the evidence and, in fact, possessed the evidence before prosecutor was aware of it, the evidence was

not suppressed.[5]  Petitioner's fifth ground should be denied.

### 7. *Hearsay Extraneous Offenses and Reasonable Doubt Instruction*

In his sixth ground petitioner alleges the court abused its discretion by allowing "hearsay unadjudicated extraneous offenses to be used against petitioner."  Specifically, petitioner identifies five instances where petitioner's extraneous offenses were admitted: (1) his ramming the victim's car (2 RR 122); (2) his coming to the victim's place of work (2 RR 189); (3) his ramming the victims car again (or perhaps the same incident but from a different witness) (*Id.*); (4) his getting into the victim's car, sitting on top of the victim, steering the car into a field, and then biting the victim (2 RR 190); and, (5) during closing arguments on punishment, allowing the prosecutor to make references to petitioner ramming the victim's car and burning her house down (3 RR 70).  All of these instances, however, are evidence of violations of the protective order, which prohibited committing or threatening physical harm, stalking, communicating, and going near the protected party.  All of the testimony petitioner complains about is relevant to the issue of violations of the protective order, a crime petitioner was on trial for.  These are not inadmissible extraneous offenses.

A review of the record reveals other instances where evidence of possibly extraneous offenses was admitted.  Petitioner's wife testified, without objection, that petitioner was a drug user.  2 RR 102.  Petitioner's mother testified, without objection, that her son was a crack cocaine user.  2 RR 155.  Lastly, the prosecutor elicited testimony regarding petitioner's past criminal convictions from petitioner during cross examination and then referenced those convictions as they related to petitioner's credibility during closing arguments.  2 RR 177 et seq.;

---

[5]The recantation by LaKesha Matthews is very non-specific and is of questionable relevance.  First, she was not an eyewitness to the arson.  Second, there was independent evidence of the violation of the protective order.

3 RR 19.

Federal courts review state evidentiary rulings merely to determine whether the trial court's error was so extreme that it constituted a denial of fundamental fairness. *Evans v. Thigpen*, 809 F.2d 239, 242 (5th Cir. 1987). Thus, the erroneous admission of prejudicial testimony justifies habeas corpus relief only when it played a "crucial, critical [and] highly significant" role in the trial. *Andrade v. McCotter*, 805 F.2d 1190, 1193 (5th Cir. 1986). Federal review is limited to errors of constitutional dimension, and federal courts do not review the mere admissibility of evidence under state law. *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991). It should be noted that petitioner's counsel raised no objection to any of the evidence that petitioner claims was extraneous offense evidence. As such, there are no evidentiary rulings for this court to review. *See Hanney v. State*, 472 S.W.2d 776, 777-78 (Tex. Crim. App. 1971) ("failure to object resulted in a waiver of the objection").

Similarly, petitioner's claim in his seventh ground that the trial court erred by failing to include a "reasonable doubt" instruction regarding extraneous offenses is without merit because the offenses petitioner complains of were either not extraneous or, as with the prior convictions, were admitted to by petitioner at trial. As discussed above, the various violations of the protective order were not extraneous; they were the acts petitioner was charged with committing in the criminal proceeding. Regarding evidence of petitioner's past convictions, no reasonable doubt instruction was necessary because petitioner admitted to the past convictions. Petitioner's sixth and seventh grounds should be denied.

## V.
## RECOMMENDATION

Petitioner has failed to present any meritorious claim warranting federal habeas corpus

relief.  It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Petition for a Writ of Habeas Corpus by a Person in State Custody filed by petitioner DONALD ELIJAH Matthews JR. be DENIED.

## VI.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this  31  day of March 2014.


_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).